IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NICOLE K. RIVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:11cv1024-SRW |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

The dispute before the court in this Social Security appeal concerns first whether (1) the ALJ's decision demonstrates that he conducted the proper legal analysis to determine whether plaintiff had (a) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period"; and (b) an "other mental impairment imposing an additional and significant work-related limitation of function"(20 C.F.R. 404, Subpart P, Appendix 1, ¶ 12.05(C)).  The second question before the court is whether the ALJ's finding that plaintiff does not meet Listing 12.05(C) has substantial evidentiary support, in view of the evidence that was before him and the additional evidence that plaintiff provided to the Appeals Council.  Upon consideration of the briefs of the parties, the administrative record, and the oral argument presented by counsel for both parties in a telephone conference held on December 10, 2013, the court concludes that the Commissioner's decision is due to be reversed.

I conclude that the ALJ did not apply Listing 12.05(C) properly for the following

reasons:

(1) First, the ALJ's finding that the criteria of the introductory paragraph of the listing were not satisfied is flawed as a matter of law.  The ALJ apparently found that plaintiff had failed to establish the requirements of the introductory paragraph of the listing for two reasons: (1) because of plaintiff's adaptive functioning (see R. 24)("As for adaptive functioning, the claimant cares for her two children, does some household chores, can read and write some, and has worked in the past"); and (2) because there is no evidence of IQ scores during the developmental period (id.)("As for initial manifestation before age 22, although the claimant received verbal, performance, and full scale IQ scores between 60 and 70 during her consultative examination with Dr. Jordan in September of 2007, ... she was 30 years old at the time and there are no earlier IQ test scores in the record").  However, the requirements of the listing's introductory paragraph are derived from the generally accepted diagnostic criteria for mental retardation.[1]  Here, the ALJ found at step two that plaintiff suffers from the severe impairment of "mild mental retardation." (R. 22). The ALJ's subsequent conclusion at step three that the criteria of the introductory paragraph of the listing are not met because of plaintiff's adaptive functioning conflicts with his conclusion

---

[1] See American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 4th ed., text revision (2000)("DSM-IV-TR") at p. 41-43 ("essential feature" of mental retardation is significantly subaverage general intellectual functioning that is accompanied by deficits in adaptive functioning); see also 65 FR 50746, 50760 (August 20, 2000)("[W]e used the DSM-III-R as the basis for the diagnostic criteria in our mental disorders listings because this reference manual is widely used and accepted in the psychiatric and psychological communities.").

that she suffers from mild mental retardation.[2]  Additionally, the ALJ's finding that plaintiff did not establish initial manifestation before age 22 rests expressly on the absence of evidence of earlier IQ testing and denies plaintiff the benefit of the Hodges presumption. See Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001)("Acknowledging the lack of IQ evidence before age twenty-two, Hodges asserts that absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout her life.  We agree."); see 65 Fed. Reg. 50746-01, 50772 (Aug. 21, 2000)(in adopting final rules, explaining addition of language to proposed Listing 12.05 to make clear it does not require IQ testing during the developmental period, referring to the "common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period").

  (2)  Further, the ALJ's conclusion that plaintiff did not satisfy the "physical or other mental impairment" criterion of subparagraph C is not supported by substantial evidence.

---

[2] IQ scores within the required range do not conclusively establish mental retardation, as an ALJ may conclude – based on evidence of adaptive functioning – that the claimant functions at a level higher than her IQ scores would suggest.  The ALJ may not, however, reach a finding that a claimant suffers from mild mental retardation and then conclude that her adaptive functioning demonstrates that she does not satisfy the "deficits in adaptive functioning" prong of the introductory paragraph.  Cf. Thomas v. Barnhart, 2004 WL 3366150, *3 (11th Cir. Dec. 7, 2004)(unpublished opinion)(reversing Commissioner's decision because the ALJ "neither rejected the I.Q. score of 69 nor determined that it was inconclusive of mental retardation"); but see Hickel v. Commissioner of Social Security, __ Fed. Appx. __, 2013 WL 5778956 (11th Cir. Oct. 28, 2013)(unpublished opinion)(concluding that substantial evidence supported ALJ's step three finding that the claimant did not satisfy the listing because of her adaptive functioning and affirming Commissioner's decision; at step two, ALJ had found a severe impairment of mild mental retardation).

Generally, a finding of mental retardation with the requisite IQ score coupled with a finding of another severe impairment will satisfy Listing 12.05(C). The ALJ here finds two additional severe impairments (depressive disorder and anxiety disorder) but concludes that those impairments impose no additional work-related limitation of function beyond that caused by plaintiff's mild mental retardation. Even *assuming* that the ALJ applied the correct legal standard, his conclusion is not supported by substantial evidence. The ALJ relies on a statement in the consultative examination report of Dr. Jordan that, "[i]n terms of vocation, the claimant's ability to respond well to coworkers, supervision, and everyday work pressures in mildly compromised secondary to emotions but more limited by her cognitive or intellectual function." (Exhibit 1F). While plaintiff complained to Dr. Jordan of being anxious and "stressed out," Dr. Jordan diagnosed only "Depressive Disorder NOS" and "Mild Mental Retardation." (Id.). However, a year later, plaintiff was diagnosed with "Generalized Anxiety [Disorder]." (Exhibit 2F). The ALJ determined that the limitations caused by this additional mental health impairment were sufficient to render it "severe." (R. 22). Even if Dr. Jordan's opinion could be understood to mean that plaintiff's depressive disorder limits plaintiff in precisely the same work-related functions as does her mental retardation, but to a lesser degree, his opinion does not take the additional severe impairment of generalized anxiety disorder into account. And while the non-examining state agency psychologist, Dr. Eno, does note plaintiff's anxiety disorder, she does not find plaintiff to suffer from mental retardation – contrary to the ALJ's findings – and the ALJ found

4

expressly that plaintiff is more limited than determined by Dr. Eno.  (Exhibit 3F; R. 26).  In short, the evidence of record does not provide substantial evidentiary support for the ALJ's conclusion that the work-related limitations caused by plaintiff's mental retardation entirely encompass – both as to nature and as to extent – the work-related limitations caused by plaintiff's two additional severe mental impairments.  The portion of Dr. Jordan's statement on which the ALJ relies does not support a finding that the work-related limitations caused by plaintiff's severe anxiety disorder and her severe depressive disorder are entirely coextensive with – and in no way greater than – the work-related limitations caused by her mental retardation.  Thus, even assuming that the ALJ's step two finding of two additional severe impairments is not itself sufficient to satisfy the second prong of subparagraph C of the Listing, the ALJ's conclusion is flawed.

For the foregoing reasons, the Commissioner's decision is due to be reversed.  The court will enter judgment remanding this matter to the Commissioner for further proceedings.[3]

DONE, this 17th day of December, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[3] The court declines to enter a judgment awarding benefits, as the Commissioner must determine in the first instance which of the ALJ's contradictory findings to credit – *i.e.*, whether plaintiff suffers from mild mental retardation *or* does not demonstrate the deficits in adaptive functioning required by the introductory paragraph of Listing 12.05(C).